DATE: _____

**HOME BOX OFFICE, INC.**

v.

**SPECTRUM ELECTRONICS, INC. d/b/a Resco Electronics, et al.**

**Civ. A. No. 82–2010.**

United States District Court,
E.D. Pennsylvania.

Dec. 2, 1983.

Charles J. Bloom, Hunt, Kerr, Bloom, Hitchner, O'Brien & Conrad, Philadelphia, Pa., David Cohen, Warshavsky, Hoffman & Cohen, P.C., New York City, for plaintiff.

Eugene A. Spector, Gross & Sklar, P.C., Philadelphia, Pa., for defendants.

## MEMORANDUM/OPINION

LOUIS H. POLLAK, District Judge.

In May, 1982, plaintiff, Home Box Office, Inc. ("HBO") brought suit in this court against Spectrum Electronics, Inc. ("Spectrum") and eight other defendants seeking an injunction against the marketing of certain microwave antennas which are capable of intercepting HBO's signal as well as money damages for past sales of those antennas. On June 3, 1982, this court issued a temporary restraining order (TRO) against further marketing of such antennas by these defendants.

Following a period of negotiation, the parties arrived at a compromise by which the suit could be resolved. The Consent Order and Judgment filed on October 5, 1982, permanently enjoins the defendants from assisting in any way in the unauthorized interception or reception of plaintiff's signal. The defendants also agreed to pay HBO the nominal amount of one dollar for each antenna sold during the previous three years and to destroy all of the antennas which they held in inventory.

On March 15, 1983, plaintiff moved for relief from the Consent Order and Judgment under rule 60(b) of the Federal Rules of Civil Procedure. The motion relies in particular upon subsections (1) and (3) of that rule which state:

(b) On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons.

1) mistake, inadvertence, surprise, or excusable neglect; . . .

3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . .

HBO asserts that it entered into the settlement in reliance upon Spectrum's statements during the TRO hearing and settlement discussions that the sales volume of all the defendants was low. If HBO had known that Spectrum had sold 248· antennas, plaintiff argues, it would not have signed the settlement agreement insofar as it related to Spectrum and thereby accepted from Spectrum only one dollar per antenna. Plaintiff notes that it originally sought $75 per unit sold and alleges that it reduced this demand only in response to repeated representations that the sales volume of each of the defendants was low.

Plaintiff argues that the statements of Spectrum's counsel during settlement discussions as well as assertions of counsel for other defendants at the TRO hearing that all defendants' sales were minimal were either direct misrepresentations or the result of a lack of knowledge of the volume of sales which led to mutual mistake on the part of both HBO and Spectrum.

In support of its arguments, HBO submits the affidavits of two of its attorneys who were involved in the TRO hearing and negotiations. These affidavits repeat the substance of the allegations contained in HBO's motion. HBO's attorneys state in their affidavits that Spectrum's representations of low sales volume were the basis for the decision of HBO to enter into the settlement agreement.

As additional support for the plaintiff's assertion that HBO accepted nominal damages in a belief that sales were small, plaintiff supplied this court with a copy of a judgment for $60,000 in a similar action in the District Court of the District of Columbia, *Marquee Television Network, Inc. v. William Early,* Civil Action No. 81–1888 (1982) which involved sales of only sixty antennas. HBO also includes copies of letters written by its counsel to Spectrum's counsel in late 1982 protesting the settlement once HBO discovered the actual number of sales by Spectrum.

Among the exhibits presented by HBO in support of its motion, the transcript of the TRO hearing before this court is particularly enlightening. Throughout the TRO hearing, it was the position of all of the defendants that a TRO was unnecessary because each of them had made only minimal sales of the equipment in question and, thus, no irreparable injury could be shown. John J. Tinaglia, Esq., counsel for Trevose Electronics, Inc., another defendant in this action, frequently spoke in a manner which suggested that his statements were applicable to all of the defendants. For example, at various times he remarked:

There have been minimal sales.

\* \* \* \* \* \*

I think it is terribly important that you know that these defendants are not out there selling hundreds or thousands of these converters, and that is terribly important.

\* \* \* \* \* \*

As I say, none of these defendants have sold, as I understand it, a great number of these devices. We have nine of them; I think we only sold three or four of them, whatever that figure is.

While Mr. Tinaglia was speaking, both Richard Thal, an officer and part owner of Spectrum, and Eugene A. Spector, Esq., Spectrum's counsel, were present in the courtroom. Neither Mr. Thal nor Mr. Spector undertook to clarify or qualify the applicability of Mr. Tinaglia's statements to Spectrum's sales. In fact, when the court asked for further statements from counsel on the issues before it, counsel for Spectrum stated "I really find it hard to add to what Mr. Tinaglia and Mr. Famiglio have already said, except to say that I too understand the need for a temporary restraining order comes to prevent such irreparable harm that it will immediately occur, and there has been no evidence to show that this is the case here. . . . ."

HBO contends that in light of the fact that each of the other defendants sold no more than fifty antennas during the time period in which Spectrum sold 248, Spectrum's sales were clearly far greater than the minimal sales represented. Thus, plaintiff requests that I reopen the consent judgment between HBO and Spectrum due to Spectrum's misrepresentations—or, in the alternative, due to mutual mistake—as to the quantity of Spectrum's sales.

In response, Spectrum argues that HBO learned the volume of Spectrum's sales when it received and accepted Spectrum's check in payment of the settlement agreement. As a result, Spectrum contends, there was no misrepresentation or mistake at the time that the settlement became final. Spectrum also notes that merely underestimating damages or failing to ascertain the full amount of damages is not sufficient grounds to reopen a consent decree. *See Mannke v. Benjamin Moore & Co.*, 375 F.2d 281 (3d Cir.1967); *Dorenzo v. General Motors Corp.*, 334 F.Supp. 1155 (E.D.Pa.1971) *dismissed*, 474 F.2d 1339 (3d Cir.1971). Thus, according to Spectrum, even if there was a misrepresentation or mistake, which it asserts there was not, there is no legal basis for reopening the judgment.[1]

The determination whether to reopen a judgment under Rule 60(b) is primarily within the discretion of the trial court. It is the trial judge's duty to construe the rule liberally in order to work substantial justice between the parties. To that end, courts tend to grant a Rule 60(b) motion more readily when there has been no opportunity to resolve the case on its merits. 7 J. Moore & J.D. Lucas, *Federal Practice* ¶ 60.19 at 235 (2d ed. 1983). However, this rule of thumb is primarily applicable to cases in which the suit has been dismissed for procedural errors or a default judgment has been entered without an appearance by the defendant.

Courts are much more reluctant to grant a motion to reopen a judgment arrived at by consent of the parties. "In general, a party will not be granted relief from a consent judgment, but the facts and circumstances of a particular case may, however, warrant relief therefrom." 7 J. Moore & J.D. Lucas, *Federal Practice* ¶ 60.19 at 239–40. This is the view taken by the Third Circuit in *Philadelphia Welfare Rights Organization v. Shapp*, 602 F.2d 1114, 1120 (1979). "[W]here, as here, the defendants made a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment their burden under Rule 60(b) is perhaps even more formidable than had they litigated and lost."

In order to reopen a judgment on the basis of a misrepresentation, the moving party has the burden of proving its

---

1. Spectrum also claims that HBO's failure to return the check sent to it in payment of the settlement agreement acts as a waiver of the misrepresentation claim under Pennsylvania law. *Nocito v. Lanuitti*, 402 Pa. 288, 167 A.2d 262 (1961). However, federal law applies in the present case under the exception to the *Erie* doctrine announced in *Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165 (1942). Both the field of communications and the question of when to reopen a federal court judgment are "areas of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by the federal law." 317 U.S. at 176, 63 S.Ct. at 173. As in *Taxin v. Food Fair Stores*, 197 F.Supp. 827 (E.D.Pa.) *aff'd*, 287 F.2d 448 (3d Cir.), *cert. denied*, 366 U.S. 930, 81 S.Ct. 1651, 6 L.Ed.2d 389 (1961), Restatement of Contracts § 480 should apply to this question and plaintiff's failure to return the consideration does not bar a claim for misrepresentation.

In addition, Spectrum argues that the acceptance of the check by HBO amounts to an accord and satisfaction—i.e., that HBO ratified the settlement for $248 and cannot now seek to overturn it. I find this argument unpersuasive since at least one essential ingredient of an accord and satisfaction—a disputed debt or claim—is lacking here. The check in the present case was for a debt of one dollar per antenna sold. HBO does not dispute that these were the terms of the agreement or that Spectrum sold 248 units. HBO challenges the validity of the settlement agreement itself, not whether the check satisfied that agreement.

claim by "clear and convincing evidence."[2] Thus, HBO must satisfy this court that Spectrum misrepresented the quantity of its sales either through direct statements or through a failure to correct the statements of others when it was under a duty to do so. HBO must also prove that this misrepresentation was essential to its decision to enter into the agreement with Spectrum.

█ Under the facts presented both in support of and in opposition to the motion now before me, I find that plaintiff has shown sufficient grounds to reopen the consent decree. During the TRO hearing Spectrum's counsel acquiesced in the representations made by other counsel that all defendants made "minimal" sales. Though there could have been some misunderstanding among defense counsel as to the meaning of the term "minimal," this general term was defined as not "hundreds or thousands."

In addition, HBO has presented, in the form of affidavits, evidence that these representations of minimal sales continued throughout the settlement process. Since Spectrum has presented no evidence to rebut this, there is a basis for finding that direct misrepresentations occurred during the settlement negotiations and, at least, that the misrepresentations made during the TRO hearing were not rectified before

the settlement was completed. In the alternative, it is conceivable that these events resulted from incorrect assumptions by Spectrum's counsel that their sales were in the range of those of the other defendants. If so, plaintiff has presented a sufficient basis for a finding of mutual mistake because Spectrum's error in turn led to HBO's erroneous belief that Spectrum's sales were similar to those of the other defendants. The judgment could then be reopened under Rule 60(b)(1).

HBO has also shown that its reliance on the misrepresentations by Spectrum led to the decision to accept only one dollar per antenna rather than the $75 per antenna originally sought. Although HBO could have required specification of the precise numbers sold prior to signing the agreement, its decision to avoid the additional cost and delay attendant on such a procedure was not unreasonable in light of the defendants' consistent representations of minimal sales.[3] Evidence of HBO's reliance is present in the direct statements of HBO's attorneys in affidavits that they would not have entered into this agreement if the defendant had not led them to believe that its sales volume was low. HBO's evidence of reliance is not contradicted by evidence presented by Spectrum.[4]

2. The moving party is not required to prove a "fraud upon the court" in order to reopen a judgment under Federal Rule of Civil Procedure 60(b). Such a showing is only necessary if a party seeks to reopen a judgment after one year from the entry of the judgment. *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir.1978).

3. Spectrum argues that there was no misrepresentation because the settlement agreement was not complete until HBO cashed the check from Spectrum. However, the settlement agreement had been signed and the consent decree filed in this action almost two months prior to receipt of the check by HBO. Under the facts presented, the agreement was intended to be complete when signed and was not dependent upon acceptance of defendant's check by plaintiff.

4. Spectrum suggests that HBO's conduct upon receipt of the check for $248 and an affidavit verifying the sales volume from Spectrum shows that HBO was not misled by earlier statements by Spectrum regarding their sales.

Spectrum refers to a series of letters from counsel for HBO to counsel for Spectrum which followed the mailing of the check by Spectrum. The check was apparently sent to HBO's counsel in Philadelphia on November 29, 1982. On December 3, 1982, only four days later, that attorney sent Spectrum's counsel a letter stating "[t]his will acknowledge receipt of the $1.00 in cash together with a check and two Affidavits in settlement of the above litigation." The check was deposited by HBO on December 8, 1982.

Spectrum notes that HBO did not contest the validity of the settlement or the quantity of Spectrum's sales until December 21, 1982 when HBO's counsel in New York sent a lengthy letter to Spectrum's counsel seeking renegotiation of the settlement. However, neither the December 3 letter nor the cashing of the check amounts to a waiver of the challenges raised in this motion.

It appears that the first letter is a "form" acknowledgement of receipt of the check. It is not unreasonable that HBO did not discover the difference between their expectations and the

■ Therefore, for the reasons discussed above, I find that HBO has shown that it entered into the settlement agreement due to either a misrepresentation by Spectrum or the mutual mistake of the parties. The evidence presented by HBO is sufficient to warrant reopening of the judgment under Rule 60(b) as it relates to the two parties presently before this court. In an Order accompanying this Memorandum/Opinion, I will, as to those two parties, vacate both the consent order and judgment and the settlement agreement upon which the consent order is based. The suit by HBO against Spectrum will thus be returned to its status at the time just prior to the execution of the settlement agreement and consent order.[5]

### ORDER

For the reasons stated in the accompanying Memorandum/Opinion, it is hereby ORDERED that:

1. Plaintiff's motion for relief from consent order and judgment is GRANTED.

2. The Consent Order and Judgment filed in the above-entitled action on October 5, 1982 and the settlement agreement on which it is based are VACATED as they relate to Home Box Office, Inc. and Spectrum Electronics, Inc.

reality of Spectrum's sales volume until its primary counsel received the Spectrum affidavit some days later. Since additional time would be necessary in which to discuss and draft an appropriate letter of protest, neither the December 3 letter nor the date of the letter of protest from HBO's New York counsel establishes that HBO was not surprised by the revelation that 248 antennas had been sold by Spectrum during the relevant time period. Thus, this circumstantial evidence of a possible lack of reliance upon Spectrum's earlier representations of its sales by HBO does not refute the direct statements of reliance in the affidavits supplied by HBO with the present motion.

5. Although the settlement agreement was not formally approved by this court, the consent order which was executed as part of the settlement agreement was both approved by and filed with this court. The failure to submit all aspects of the settlement to this court does not affect the court's authority to vacate the settlement and return the parties to their positions prior to settlement. When the moving party has presented evidence sufficient to warrant reopening of the judgment under Rule 60(b) and there is no significant prejudice to the non-moving party, the court can grant relief from the agreement of the parties which formed the basis for the judgment. *See National Audubon Society v. Watt,* 678 F.2d 299 (D.C.Cir.1982); *Future Plastics Inc. v. Ware Shoals Plastics, Inc.,* 407 F.2d 1042 (4th Cir. 1969); *Hester v. New Amsterdam Casualty Co.,* 268 F.Supp. 623 (D.C.S.C.1967). In its memorandum in opposition to the present motion, Spectrum suggests that reopening the judgment will merely provide HBO with greater bargaining leverage in future negotiations to the prejudice of Spectrum. I agree with the finding of the Fourth Circuit in a similar case that such harm is not sufficient to prevent the reopening of the judgment. *Future Plastics, Inc. v. Ware Shoals Plastics, Inc.,* 407 F.2d 1042, 1047 (1969).